FULWILER ELECTRIC CO. v. JINKS McGEE & CO. (No. 960.)

(Court of Civil Appeals of Texas. El Paso. April 24, 1919.)

1. SALES ⬯445(2)—EVIDENCE—REPRESENTATIONS BY SELLER.

In an action to recover the value of a mule claimed to have been purchased without inspection on representations of soundness, evidence *held* not to justify submitting any issue of fraudulent representations as to the sound condition of the mule.

2. SALES ⬯437(1)—BREACH OF WARRANTY—LIVE STOCK—PLEADING.

In buyer's action to recover the value of a mule sold, the petition, being in the alternative praying for damages in event that it should be held that plaintiff could not rescind, did not justify submitting the issue of breach of warranty of soundness.

3. SALES ⬯442(2) — BREACH OF WARRANTY—SOUNDNESS OF ANIMAL—DAMAGES.

Upon a breach of warranty of soundness of a mule sold, the measure of damages is the difference between the mule's value at the time of sale, with the defect or unsoundness constituting the breach, and what would have been its value without such defect, with interest thereon at 6 per cent. from date of sale.

4. SALES ⬯266, 279—ANIMALS—SOUNDNESS—IMPLIED WARRANTY.

A warranty of soundness of animal sold does not cover apparent defects, and soundness is not an implied warranty; and, in the absence of inquiry and representation as to soundness, there would be no warranty thereof.

5. SALES ⬯270 — ANIMALS — IMPLIED WARRANTY OF SOUNDNESS—INSPECTION.

Where buyer's agent observed and examined the mule bought, the purchase was at the buyer's risk.

Appeal from Taylor County Court; E. M. Overshiner, Judge.

Action by Jinks McGee & Co. against the Fulwiler Electric Company, originally brought in the justice court, and upon appeal to the county court there was a judgment for plaintiff, from which the defendant appeals. Reversed and rendered.

C. H. Fulwiler, of Abilene, for appellant. Ben L. Cox, of Abilene, for appellee.

WALTHALL, J. This suit was originally brought in the justice of the peace court by appellee, Jinks McGee & Co., to recover of appellant, Fulwiler Electric Company, $150, the value of one mule claimed to have been purchased without inspection by appellee from appellant on representations of appellant that said mule was sound and without blemish, when in truth and in fact said representations were false, and that one of the fore legs of said mule had been broken, so

---

that one leg was shorter than the other, thereby decreasing the value of the mule. The case was appealed to the county court, and there tried with the aid of a jury, resulting in a verdict in favor of appellee in the sum of $75, on which judgment was rendered.

The facts necessary to a decision of the issues presented here are substantially as follows: John Hart (claimed by appellee to be the agent and representative of appellant, who, in fact, made the false representations as to the sound condition of the mule) said to W. J. Fulwiler, president of appellant company, that he knew a man who was in the market for a motortruck, and that if appellant would treat him right he thought he could make the sale for him of the truck. Fulwiler said to Hart that if he, Hart, would bring the man to his office, and he, Fulwiler, could make the sale, he would pay Hart for his trouble. Hart told Fulwiler that the man was Allen who lived at Lawn. Hart brought Allen to see Fulwiler. Allen wanted to trade in some mules, and so told Fulwiler. Fulwiler replied that he could not use the mules, but that if he could place them at Allen's price he would make the trade; Fulwiler inquired of Hart whether he knew of any one who was buying mules, and Hart replied that he thought Price would buy them (Price was buying mules for appellee). Fulwiler requested Hart to have Price come to his office, and that he would take Price out to show him the mules. Hart took Price to Fulwiler's office. Fulwiler, Hart, Rollins, and Price went to Allen's place to look at the mules. Price was at the pens, the witnesses said from twenty minutes to one hour, looked at the mules, trotted them around in the lot, looked in their mouths, and looked them over generally. Fulwiler was not present or assisting in the examination of the mules. Hart did not know the mule was lame, and had no connection with the deal other than as stated. Price said to Hart that he would go out to Allen's and look at the mules if they were good, straight stuff. Hart replied that Allen told him they were all right. Hart was in no wise connected with appellant's business, did not work for the company, was never asked or authorized to act for the company in any capacity, except as stated. Hart's object and interest in assisting in effecting the trade was that appellant, in the event the deal was consummated, would pay him for his services in making a sale of the motortruck. Appellant, represented in the transaction by the president, Fulwiler, knew nothing whatever about mules, their value, condition, or fitness and so told Allen, but agreed with Allen that appellant would take mules in on the deal on condition that appellant could find some one who would buy the mules from appel-

lant at the same price. With that end in view appellant went to appellee to sell appellee said mules and to have appellee examine the mules and pass on their condition, fitness, etc., and to make appellant an offer thereon. Appellee sent Price, an expert in buying and selling mules, to examine the mules. After Price had examined the mules for appellee, appellee (with other mules included in the deal) offered appellant the sum of $150 for the mule in controversy, and on the offer so made appellant took the mule from Allen on the deal at the price offered, and sold or accepted appellee's offer of $150 for the mule. Appellee knew that Fulwiler had never seen the mule. Fulwiler in person made no representation to appellee, or to Price, as to the condition, fitness, or value of the mule.

[1-3] Appellant presents eight assignments of error with propositions thereunder. We think we need not discuss them separately, but have concluded that the court was in error, under the evidence, in submitting any issue of fraudulent representations as to the sound condition of the mule. Submitting such issue might not be reversible error, since the jury found on the clause in the charge submitting the issue of the warranty of soundness. But the petition does not declare upon a breach of warranty of soundness. In the prayer for relief, appellee sues in the alternative, and prays for damages in the sum of $100 in the event it should be held that appellee could not rescind. We hardly think the pleading justified submitting the case on a breach of warranty of soundness. The court, however, was in error, we think, in submitting the proper measure of damages, the measure submitted being "the difference, if any, between the reasonable market value of such a mule as was contracted for by plaintiff and the value of the mule as actually sold plaintiff." On a breach of warranty of soundness of the mule, the rule for the measure of the damages is the difference between the value of the mule at the time of the sale with such defect or unsoundness as was shown to exist and constituted the breach of the warranty and what would have been its value if such defect or unsoundness had not existed, with interest on the difference, if any, at the rate of 6 per cent. per annum from the date of sale. Snyder et al. v. Baker et al., 34 S. W. 981; Miller et al. v. Greenleaf, 18 S. W. 89. In Anding v. Perkins, 29 Tex. 348, Mr. Justice Willie quotes with approval the rule for the measure of damages stated by Mr. Sedgwick in his Measure of Damages, in an action brought on a breach of warranty; that is, the difference between the value which the thing sold would have had at the time of the sale, if it had been sound or corresponding to the warranty, and its actual value

with the defect. Sedgwick, Measure of Damages, 290, 291.

[4] But a warranty of soundness does not cover apparent defects. In selling an animal soundness is not an implied warranty, and in the absence of inquiry and representation as to soundness there would be no warranty as to soundness. Wood v. Ross et al., 26 S. W. 148.

[5] There was no evidence of inquiry or representation as to soundness of the animal. The nearest this evidence comes to inquiry and representation of soundness was, Price said to Hart that he would go and look at the mules if they were good sound stuff, and Hart replied to Price that Allen had told him they were all right. Upon that representation Price went to Allen's place, and personally inspected the mules. We think the evidence does not disclose a special warranty of soundness of the mule. Price knew that the animal did not belong to the appellant, and knew that neither Fulwiler nor Hart knew any more about the soundness of the mule than he himself knew. He was given every opportunity to examine the mule, and if he then wanted to know more of it than his personal examination disclosed, he was with Allen, and could have, and we think should have, inquired of Allen, the owner of the mule, and the one really selling the mule, of its soundness. We think the evidence discloses that Price purchased at his own risk.

For reasons stated the case is reversed, and here rendered for appellant.

─────────────────────────────

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes